### In re LINERBOARD ANTITRUST LITIGATION.

### No. MDL 1261.

United States District Court,
E.D. Pennsylvania.

Aug. 27, 2004.

Allen D. Black, Roberta D. Liebenberg, Fine, Kaplan & Black, Philadelphia, PA, H. Laddie, Montague, Jr., John R. Taylor, Berger & Montague PC, Philadelphia, PA, Howard Langer, Langer & Grogan P.C., Philadelphia, PA, Joseph Bruckner, Lockridge, Grindal, Nauden, Holstein, PLLP, Minneapolis, MN, Robert J. Larocca, Kohn, Swift & Graf, P.C., Philadelphia, PA, Anthony J. Bolognese & Associates, LLC, Philadelphia, PA, Carol V. Gilden, Michael Jerry Freed, Steven A. Kanner, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, Chicago, IL, Howard Langer, Langer & Grogan, P.C., Philadelphia, PA, Robert J. Larocca, Kohn Swift & Graf, P.C., Philadelphia, PA, for plaintiffs.

Andrew G. Klevorn, Kathleen M. Mulligan, Nathan P. Eimer, Sidley & Austin, Chicago, IL, Barbara W. Mather, Pepper, Hamilton, LLP, Philadelphia, PA, Eric F. Gladbach, New York City, John P. Hooper, New York City, Mark Mc Careins, Winston & Strawn, Chicago, IL, Scott L. Fast, Ralph G. Wellington, Sherry A. Swirsky, Schnader, Harrison, Segal and Lewis L.L.P., Philadelphia, PA, Paul H. Saint-Antoine, Drinker, Biddle & Reath LLP, Philadelphia, PA, Douglas J. Kurtenbach, Robert F. Huff, Jr., Kirkland & Ellis, Daniel W. Smith, Norman M. Hirsch, Jenner & Block, Chicago, IL, Daniel B. Huyett, Stevens & Lee, Reading, PA, Bruce Michael Zessar, for defendants.

James J. Rodgers, Dilworth, Paxson L.L.P., Philadelphia, PA, Joseph M. Donley, Kittredge, Donley, Elson, Fullem & Embick, Philadelphia, PA, George Bochetto, Bochetto & Lentz PC, Warren Rubin, Law Offices of B.M. Gross PC, Philadelphia, PA, James J. Rodgers, Dilworth Paxson L.L.P., Philadelphia, PA, William J. Blechman, Kenny, Nachwalter, Seymour, Arnold, Critchlow and Spector, Miami, FL, for movants.

### MEMORANDUM

DuBOIS, District Judge.

## I.  INTRODUCTION

Presently before the court is Defendants' Motion Under Rule 60 to Correct Mistake (Docket No. 392, filed June 6, 2004), Defendants' Motion for Expedited Discovery (Docket No. 391, filed June 9, 2004), Direct Action Plaintiffs' Opposition to Defendants' Motion for Expedited Discovery (Docket No. 410, filed July 9, 2004), Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion for Expedited Discovery (Docket No. 456, filed July 28, 2004), Memorandum by Class Counsel in Opposition to Defendants' Motion for Relief Under F.R.C.P. 60(b) (Docket No. 457, filed July 30, 2004), Defendants' Reply to Class Memorandum in Opposition to De-

fendants' Motion for Expedited Discovery in Connection with Rule 60 Motion (Docket No. 462, filed August 6, 2004), Direct Action Plaintiffs' Supplemental Brief Regarding "Rule 60 Issues" (Docket No. 477, filed August 18, 2004) and Defendants' Response to Direct Action Plaintiffs' Supplemental Brief Regarding "Rule 60 Issues" (Docket No. 478, filed August 23, 2004). For the reasons set forth below, defendants' Motion Under Rule 60 and Motion for Expedited Discovery are denied. In order to resolve the issue defendants raise in their motions, the Court grants leave to all entities on whose behalf such Requests for Exclusion were filed to affirm their intent to be opted out of the classes before June 9, 2003 and to ratify the Request for Exclusion filed on their behalf. By adopting this procedure, the Court is not ruling on the propriety of the questioned opt outs. In the event any such entities do not ratify the Request for Exclusion by which they were opted out of the classes in accordance with this Memorandum and Order, defendants may file supplemental motions under Federal Rule of Civil Procedure 60 and for expedited discovery.

## II. *FACTUAL AND PROCEDURAL HISTORY*

This is an antitrust action involving allegations that a number of U.S. manufacturers of linerboard engaged in a combination and conspiracy in unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.[1] The Court sets forth only an abbreviated factual and procedural history as pertinent to Defendants' Motion to Dismiss Plaintiffs' State Law Claims. The factual background of the case is described at length in this Court's Memorandum dated October 4, 2000 denying defendants' Motion to Dismiss, *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2000 WL 1475559, at *1–3 (E.D.Pa. Oct.4, 2000) ("*Linerboard I*"), its Memorandum dated September 4, 2001 certifying classes of direct pur-

chasers of corrugated boxes and corrugated sheets, *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 201–04 (E.D.Pa.2001) ("*Linerboard II*"), the Opinion of the Court of Appeals for the Third Circuit affirming the September 4, 2001 Memorandum and Order, *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 147–49 (3d Cir.2002) ("*Linerboard III*"), this Court's Memorandum dated August 26, 2003 approving the final settlement between plaintiffs classes and two of the defendants, Temple–Inland, Inc. and Gaylord Container Corporation, *In re Linerboard Antitrust Litig.*, 296 F.Supp.2d 568, 573–575 (E.D.Pa. 2003) ("*Linerboard IV*"), and this Court's Memorandum dated June 2, 2004 awarding class counsel attorneys fees, *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, *1–3 (E.D.Pa. Jun.2, 2004) ("*Linerboard V*").

### A. THE CLASS CASE

Class plaintiffs named the following defendants in their Complaints and Amended Complaints—Stone Container Corporation, Jefferson Smurfit Corporation, Smurfit–Stone Container Corp., International Paper Company, Georgia–Pacific Corporation, Temple–Inland, Inc., Gaylord Container Corporation, Tenneco, Inc., Tenneco Packaging, Inc., Union Camp Corporation, Packing Corporation of American and Weyerhaeuser Paper Company—and alleged that they conspired to raise the price of corrugated containers and corrugated sheets throughout the United States by restricting production and/or curtailing inventories in violation of federal antitrust laws.

By Memorandum and Order dated September 4, 2001, this Court certified two plaintiff classes: a "sheet class" consisting of buyers of corrugated sheets and a "box class" consisting of purchasers of corrugated containers. *Linerboard II*, 203 F.R.D. at 224. The Court's certification rulings were affirmed by the Third Circuit and the Supreme

---

1. Linerboard includes any grade of paperboard suitable for use in the production of corrugated sheets, which are in turn used in the manufacture of corrugated boxes and for a variety of industrial and commercial applications. Corrugated sheets are made by gluing a fluted sheet which is not made of linerboard, known as the corrugating medium, between facing sheets of linerboard; corrugated sheets are also referred to as containerboard. The defendants named in the instant lawsuits are major integrated manufacturers and sellers of linerboard, corrugated sheets and corrugated boxes.

Court denied certiorari. *See Gaylord Container Corp. v. Garrett Paper, Inc.*, 538 U.S. 977, 123 S.Ct. 1786, 155 L.Ed.2d 666 (2003) (No. 02–1070).

By Order dated August 26, 2003, this Court approved a partial settlement in the amount of $8 million between plaintiff classes and Temple–Inland, Inc. and Gaylord Container Corp. The $8 million settlement was reduced to $7.2 million in accordance with the terms of the settlement agreement based on the number of parties that subsequently opted-out of the classes. This first partial settlement was described by petitioners as an "ice-breaker—a settlement that would lead to further settlements."

Within a month of Court approval of the ice-breaker settlement, on September 22, 2003, the plaintiff classes and defendants International Paper Company and Union Camp Corporation, Georgia Pacific Corporation, and Weyerhauser Company announced they had reached a settlement agreement in the total amount of $68 million (the "International Paper Settlement"). The Court granted final approval of that settlement on December 8, 2003.

In October and November 2003, the parties announced additional partial settlements with defendants Packaging Corporation of America, Tenneco, Inc., and Tenneco Packaging, Inc. (The "PCA Settlement") in the amount of $43 million and with defendants Stone Container Corporation, Jefferson Smurfit Corporation, and Smurfit Stone Container Corporation (the "Stone Settlement") in the amount of $92.5 million. As a result of a "most favored nation's clause" in the PCA Settlement Agreement, the terms of the Stone Settlement triggered a reduction in the PCA Settlement from $43 million to $34 million. The Court granted final approval of both the PCA Settlement and the Stone Settlement by Memorandum and Order dated March 21, 2004. With the Court's approval of these last two partial settlements, all claims in the class action were resolved for a total of $202,572,489.

## B. THE DIRECT ACTIONS

### 1. *Requests for Exclusion and Initiation of Suits*

One-hundred and forty entities opted out of the classes certified by the Court by filing Requests for Exclusion on or before June 9, 2003.[2] These 140 entities opted-out not only themselves but also approximately 3400 subsidiary and affiliate companies. A detailed description of the notice to classes and the procedural history involving the opt-outs from the classes is provided in this Court's Memorandum of September 5, 2003. *In re Linerboard Antitrust Litigation*, 292 F.Supp.2d 644, 649–652 (E.D.Pa.2003). Of the 140 Requests for Exclusion, 13 groups of opt-outs subsequently filed tag-along actions against defendants. As of the date of this memorandum, 11 of those groups have outstanding claims against one or more of the defendants.[3]

---

2. Copies of the Record of Potential Class Members Who Excluded Themselves from the Classes are appended to this Court's Memorandum and Order dated December 8, 2003 approving the Settlement Agreement between Temple–Inland, Inc. and Gaylord Container Corporation; this Court's Memorandum and Order dated December 8, 2003, granting Class Plaintiffs' Motion for Final Approval of Settlement Agreement Between the Class and International Paper Company and Union Camp Corporation, Georgia–Pacific Corporation, and Weyerhauser Company; and this Court's Memorandum and Order dated April 21, 2004 granting Class Plaintiffs' Motion for Final Approval of the Settlements with Defendants Packaging Corporation of America, Inc., Tenneco, Inc. And Tenneco Packaging Inc. and with Defendants Stone Container Corporation, Jefferson Smurfit Corporation, and Smurfit Stone Container Corporation.

3. The following are the direct actions that are proceeding:

1. *Perdue Farms Incorporated v. Stone Container Corporation, et al.*, No. 03–1702 (D. Md. filed June 9, 2003);

2. *Sara Lee Corporation, et al. v. Smurfit Stone Container Corporation, et al.*, No. 03–3939 (N.D. Ill. filed June 10, 2003);

3. *Procter & Gamble Company, et al. v. Stone Container Corporation, et al.*, No. 03–3944 (N.D. Ill. filed June 10, 2003);

4. *United States Gypsum Company, et al. v. Stone Container Corporation, et al.*, No. 03–4251 (N.D. Ill. filed June 10, 2003);

5. *Smithfield Foods, Inc., et al. v. Smurfit Stone Container Corporation, et al.*, No. 03–3968 (N.D. Ill. filed June 11, 2003);

6. *Hormel Foods Corporation, et al. v. Stone Container Corporation, et al.*, No. 03–3421 (D. Minn. filed June 13, 2003);

In a letter dated February 18, 2004, Liaison Counsel for Direct Action Plaintiffs Richard Leveridge, Esquire, informed the Court that some of his clients had opted-out certain other companies from the classes certified by the Court without authority to do so. After conducting an investigation of the opt-out procedures followed by their clients, in a letter to the Court dated March 1, 2004, Liaison Counsel reported that 79 companies were opted out by other entities without authority.

7. *Milne Fruit Products, Inc., et al. v. Stone Container Corporation, et al.*, No. 03–4049 (N.D. Ill. filed June 13, 2003);

8. *Kellogg Company, et al. v. Smurfit Stone Container Corporation, et al.*, No. 03–4213 (N.D. Ill. filed June 19, 2003)

9. *Farmland National Beef Packing Co. v. Stone Container Corporation, et al.*, No. 03–1312 (D. of Kansas filed August 29, 2003);

10. *Mars Inc., et al. v. Stone Container Corporation, et al.*, No. 03–6977 (N.D. of Ill. filed October 1, 2003); and

11. *Conopco, Inc., et al. v. Smurfit Stone Container Corporation, as successor to Stone Container Corporation, et al.*, No. 03–3549 (E.D. Pa. filed June 9, 2003).

All defendants have reached settlement agreements with plaintiffs in Alcoa [INSERT]

*Bristol–Myers Squibb Company v. Smurfit Stone Container Corporation, et al.*, No. 03–4251 (S.D.N.Y. filed June 10, 2003) was voluntarily dismissed prior to being transferred to this court.

4. The Order identified the following 79 companies as having been opted out without authority: 3D Planet, Inc.; Alamac Enterprises Inc.; All American Gourmet Inc.; Anomatic Corporation; Apple Container Corporation; Avoset (Morningstar West); Bannow Bottlers Limited; Barclays Global Investors, N.A.; Broderbund Living Books, Inc.; Broderbund Productions, Inc.; Broderbund Software, Inc.; Burger King, Inc.; Caremark Inc.; China Coast, Inc.; Clearfield Cheese Company; Compact Publishing Company, Inc.; Compton's Learning Company; Compton's New Media, Inc.; Country Pure; CP Assets, Inc.; Creative Wonders, Inc.; Dalton Stamp & Die, Inc.; Dupont Photomasks, Inc.; Electrocmap, Inc.; Foremost; Future Vision Holding, Inc.; Future Vision Multimedia, Inc.; Go Direct, Inc.; Golden Gem; Himolene Incorporated; Huntsville Diagnostic Laboratory, Inc.; Imperial Flavors Inc.; Johanna Foods; Juice Bowl; Learning Company Properties, Inc.; Learning Services, Inc.; Leidel Corporation; Mccain Citrus; Micrologic Software, Inc.; Microsystems Software, Inc.; Mindscape Holdings, Inc.; Mindscape Inc.; Minnesota Educational Computing Corporation; Minot Foods; Multimedia Products Corporation; Olive Garden, Inc.; Palladium Interactive Direct, Inc.; Palladium Interactive, Inc; PF Magic, Inc.; Polypropylene Implementation Corporation; Premium Beverage; Prince Castle; Priority Software Packaging, Inc.; Red Lobster, Inc.; Rich Ice Cream; SBCL, Inc.; Seneca; Serv–O–Matic, Inc.; Skills Bank Corporation; Smithkline Beecham Clinical Laboratories, Inc.; SofSource, Inc.; Software Marketing Corporation; Strategic Simulations, Inc.; Sterling Drug; Sterling Pharmaceuticals, Inc.; T/Maker Company; Tec Direct, Inc.; TLC Education Properties, Inc.; TLC Entertainment Properties; TLC Multimedia; TLC Productivity Properties, Inc.; Tree Top; Van De Kamps, Inc.; Velda Farms; Vendala, Inc.; Ventura; Vita Pakt; Wham–0, Inc.; and Wordstar Atlanta Technology Center, Inc.

By Order dated March 19, 2004, the Court directed the 79 companies opted out without authority, by name,[4] to file with the Court motions and declarations pursuant to Fed. R.Civ.Proc. 60(b) to amend the judgments entered in this action[5] to remove their names from the lists of entities identified as having opted out of this class action litigation ("Rule 60(b) Motions"). Ten of the 79 companies identified Liaison Counsel filed the Rule 60(b) Motion and Declaration.[6] In the Order of March 19, 2004, the Court also

5. The judgments addressed by these 60(b) Motions are three Orders issued by the Court approving partial settlements with the defendants— the (1) Order of April 26, 2003, granting Class Plaintiffs' Motion for Final Approval of Settlement Agreement between the Classes and Temple–Inland, Inc. and Gaylord Container Corporation; (2) Order of December 8, 2003, granting Class Plaintiffs' Motion for Final Approval of Settlement Agreement Between the Class and International Paper Company and Union Camp Corporation, Georgia–Pacific Corporation, and Weyerhauser Company; and (3) Order of April 21, 2004 granting Class Plaintiffs' Motion for Final Approval of the Settlements with Defendants Packaging Corporation of America, Inc., Tenneco, Inc. And Tenneco Packaging Inc. and with Defendants Stone Container Corporation, Jefferson Smurfit Corporation, and Smurfit Stone Container Corporation. Each Order incorporates by reference a list of companies that opted out of the classes certified by the Court. Specifically, paragraphs two and three of each Order refer to a "Record of Potential Class Members Who Excluded Themselves from the Classes Certified by the Court."

6. The following ten companies identified in the Court's March 19, 2004, filed the Rule 60(b) Motions and Declarations: All American Gourmet Company, Country Pure, Tree Top, Foremost Foods USA, Johanna Foods, Pasco Beverages, Ventura, Vita Pakt Citrus, Rich Ice Cream, and Almanac Enterprises, Inc.

directed the 13 companies that Liaison Counsel reported to the Court had opted-out other companies without authority to file a declaration that described the process by which they opted out each company." [7] All companies so directed submitted such a declaration by the due date, April 15, 2004.

By Order and Memorandum dated May 4, 2002, the Court granted the 10 Rule 60(b) Motions submitted by parties that had been opted out of the classes without authority. Each of the movants certified that they had no knowledge of the fact that they were opted out of the classes. Therefore, the only evidence on the issue was that provided in the declarations filed by the 13 companies that opted the movants out of the classes without authority to do so. Based on this evidence, the Court concluded that the Motions should be granted under Rule 60(b)(1) since all companies that opted out these entities attested that they did so inadvertently or based on mistaken knowledge about the nature of their relationship with the company or companies they opted out.

By Order date May 11, 2004, the Court directed the Clerk of Court to affix copies of a corrected list of opt-outs to the Court's final judgments approving the partial settlements.[8] This corrected list of opt-outs was appended to the Order of May 11, 2004.

On June 6, 2004, defendants filed their Motion Under Rule 60 to Correct Mistake ("Rule 60 Motion") and a Motion for Expedited Discovery ("Discovery Motion"). At the June 2004 Status Conference, the defendants requested that the parties brief the Discovery Motion first with further briefing on the Rule 60 Motion to follow. Direct action plaintiffs did not object to defendants' proposed two-stage procedure but stated that their opposition to the Discovery Motion would also address the merits of the Rule 60 Motion. Liaison counsel for the classes also requested that he be permitted to file a brief on behalf of the classes that, like the direct action plaintiffs' briefs, would address both the Rule 60 Motion and the Discovery Motion. The Court approved this procedure. Defendants replied to the submissions of direct action plaintiffs and class plaintiffs' and, in doing so, addressed plaintiffs arguments related to the Discovery Motion as well as the Rule 60 Motion.

The Court determined, after review of all the motion papers, that it was appropriate to decide the two motions at the same time. In recognition of the fact that the parties might not have addressed the merits of Rule 60 Motion in full in briefing the Discovery Motion, the Court, by Order dated August 11, 2004, granted the parties leave to file supplemental briefs related to all Rule 60 issues on or before August 18, 2004.

The Court writes at this time to address both the Rule 60 Motion and the Discovery Motion. While the parties have advanced a myriad of arguments in addressing these motions,[9] this Memorandum addresses what the

---

7. The Order identified the following companies as having filed Requests for Exclusion from the classes on behalf of the entities without authority to do so: Baxter Healthcare Corp.; Coca–Cola Enterprises, Inc.; E.I. duPont de Nemours & Co.; General Mills, Inc.; GlaxoSmithKline; H.J. Heinz Co.; Mattel, Inc.; Newell Rubbermaid, Inc.; PepsiCo, Inc.; Rich Products Corp.; Schreiber Foods, Inc.; The Clorox Co.; West-Point Stevens, Inc.

8. See *supra* note 5.

9. In their Opposition to Defendants' Motion for Expedited Discovery, direct action plaintiffs argue the Court should deny the Discovery Motion and dismiss the Rule 60 Motion as moot. Direct Action plaintiffs make the following arguments: (1) defendants cannot challenge the validity of the opt-out list because (a) defendants lack standing to challenge the authority of the parent corporations to opt out their subsidiaries and (b) this Court's rulings regarding the opt-out list are the law of the case; (2) defendants are estopped from asserting their objections; (3) the Court should reject defendants's interpretation of the settlement agreements between the classes and the various defendants as (a) giving defendants a "vested defense" and (b) releasing opt out plaintiffs claims against defendants; (4) the settlements are unfair and unreasonable if the opt-out entities are returned to the classes; (5) ratification is consistent with the Federal Rules of Civil Procedure; and (6) the discovery defendants seek is not only irrelevant, it is burdensome.

In Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion for Expedited Discovery, defendants argue: (1) direct action plaintiffs cannot assert any undue burden associated with defendants' interrogatory; (2) defendants have standing to file their Rule 60(b) motion; (3) there is no law of the case that bars the Rule 60

Court considers to be the material issues: (1) the unidentified unauthorized opt-out problem raised by defendants; (2) requirements of a proper opt-out; (3) ratification of Requests for Exclusion by the parties on whose behalf they were filed; and (4) the earlier procedure employed by the Court to address the problem of identified unauthorized opt-outs. The disposition of these issues eliminates the need for the Court to decide all of the other issues presented.

## III. *LEGAL STANDARDS*

### A. AUTHORITY FOR THE COURT TO MANAGE MULTIDISTRICT LITIGATION

The Manual for Complex Litigation (Fourth) § 11.41 (2004) ("Manual") provides that "[t]he Federal Rules of Civil Procedure, along with the court's inherent power, provide ample authority for early and ongoing control of discovery in complex litigation." The Manual explains:

> Fundamental to controlling discovery is directing it at the material issues in controversy. The general principle governing the scope of discovery stated in Rule 26(b)(1) permits discovery of matters, not privileged, "relevant to the claim or defense of any party." The court has discretion to expand that to "any matter relevant to the subject matter involved in the action." But Rule 26(b)(2) directs the court to limit the frequency and extent of use of the discovery methods permitted by the rules in order to prevent "unreasonably cumulative or duplicative" discovery for which, "the burden of expense ... out-

weighs its likely benefit, taking into account the needs of the case ... the importance of the issues at stake ... and the importance of the proposed discovery in resolving the issues." This underlying principle of proportionality means that even in complex litigation, discovery does not require leaving no stone unturned.

*Id.;* Fed.R.Civ.P. 26.

### B. FEDERAL RULE OF CIVIL PROCEDURE 60

"The general purpose of Rule 60, which provides relief from judgments for various reasons, is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Boughner v. Secretary of Health, Education and Welfare,* 572 F.2d 976, 977 (3d Cir.1978); *Liberty National Bank and Trust Co. v. Yackovich,* 99 F.R.D. 518, 519 (W.D.Pa.1982). A court's discretion to grant relief has been described as "especially broad," *Hopper v. Euclid Manor Nursing Home, Inc.,* 867 F.2d 291 (6th Cir.1989) and the rule has been described as a "grand reservoir of equitable power to do justice in a particular case" *Pierre v. Bernuth, Lembcke Co.,* 20 F.R.D. 116, 117 (S.D.N.Y.1956).

■ Rule 60(b) provides that on motion and upon such terms as a are just, the court may relieve a party or a party's legal representative from a final judgment order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under

Motion; (4) defendants are not estopped from seeking to correct problems with the court's judgments created by direct action plaintiffs; (5) if the Court grants the Rule 60 Motion, it could permit the affected entities to participate in the class settlement; and (6) ratification will not work.

Liaison counsel for the classes thereafter filed Memorandum by Class Counsel in Opposition to Defendants' Motion for Relief under F.R.C.P. 60(b). Class Counsel argues: (1) Rule 60(b) cannot expand a judgment or enforce a settlement; (2) defendants' Rule 60 Motion is an improper motion to alter or amend a judgment under Rule 59(e); (3) Rule 60(b) is disfavored in a settlement context; (4) defendants either intentionally or negligently waited too long to file the Rule 60

Motion; (5) Rule 60(b) should not be used to prejudice class members; and (5) defendants' theory of "vested rights" is wrong.

In Defendants' Reply to Class Memorandum in Opposition to Defendants' Motion for Expedited Discovery in Connection with the Rule 60 Motion, defendants argue: (1) class counsel has no standing to object to defendants' motion for discovery; (2) Rule 60 is the correct vehicle for resolving the issue, although defendants may raise it elsewhere such as in summary judgment motions; (3) the settlement history cannot displace the integrated settlement agreements or this Court's findings as to what constitutes a "fair and reasonable settlement"; (4) defendants' motion is timely; and (5) the equities favor only correcting any mistakes in the Court's judgment.

Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. Fed. R.Civ.P. 60(b). "The decision to grant or deny relief pursuant to Rule 60(b) lies in the 'sound discretion of the trial court guided by accepted legal principles applied in light of all the relevant circumstances.' " *Ross v. Meagan,* 638 F.2d 646, 648 (3d Cir.1981). Further, "a 60(b) motion to set aside judgment is to be 'construed liberally to do substantial justice.' " *Fackelman v. Bell,* 564 F.2d 734, 735 (5th Cir.1977) *citing Laguna Royalty Co. v. Marsh,* 350 F.2d 817, 823 (5th Cir.1965). However, a "Rule 60(b) motion may not be used as a substitute for appeal ..." *Smith v. Evans,* 853 F.2d 155, 158 (3d Cir.1988).

## IV. *DISCUSSION*

### A. THE ALLEGED UNIDENTIFIED UNAUTHORIZED OPT–OUT PROBLEM

In their Rule 60 Motion defendants assert that, based on the discovery they have received from direct action plaintiffs, approximately 3,000 entities were improperly opted out of the classes. Def. Mem. in Support of Rule 60 Mot. 7. Appended to their Rule 60 Motion are two lists of companies: (1) the 69 companies identified by Liaison Counsel as having been opted-out without authority that did not file Rule 60(b) Motions and Declarations as directed by the Court's Order of March 19, 2004, and (2) 2,900 other companies that defendants state may have been opted out by another company without authority to do so. According to defendants the "vast majority of these situations [on both lists] involved parent corporations that have purported to opt out wholly or partially-owned subsidiaries or affiliates." *Id.* at 8. Defendants assert that "the only claimed basis for the authority to opt-out these other companies appears to be that the parent corporation owned some or all of the stock in the subsidiary or affiliated entity for which it filed its Exclusion Notice." *Id.* Defendants argue that ownership of an entity is not enough to properly opt it out of the classes and instead assert that the subsidiary must have given "contemporaneous authorization" to the party that filed a Request for Exclusion on its behalf.

Absent contemporaneous authorization, defendants argue that a Request for Exclusion filed on behalf of another party is void and that the appearance of such company's name on the corrected list of opt-outs appended to the Court's final judgments is a mistake. Def.'s Mot. for Expedited Discovery ¶ 2. To correct this alleged mistake, defendants have moved under Federal Rule of Civil Procedure 60 to remove from the lists of opt-outs appended to the Court's judgments the "names of any entity that the record reflects did not contemporaneously authorize their being opted out of the classes." [10] *Id.* Specifically, defendants (1) ask the Court to immediately remove the names of the 69 companies on whose behalf a Request for Exclusion was filed from the corrected opt-out list; and (2) state that they may challenge the Requests for Exclusion of approximately 2,900 other companies, pending the outcome of their request for expedited discovery and completion of any authorized discovery.

In their Discovery Motion defendants propose that every entity that filed a Request for Exclusion on behalf of another entity, 140 companies, and every entity on whose behalf a Request for Exclusion was filed, approximately 3,400 companies, provide defendants with "all facts not previously provided in [ ] interrogatory answers that demonstrate that such entity was properly opted out of the certified classes." [11] Defendants assert that

---

10. See *supra* note 5.

11. In order to determine whether "contemporaneous authority" was given by one party to another, defendants ask the Court to order every entity that filed a Request for Exclusion on its own behalf and every entity on whose behalf a request was filed, approximately 3,400 companies, to answer the following interrogatory:

this discovery is necessary for the Court and the parties to "completely and finally [ ] resolve the issue raised by Defendants' Rule 60 Motion to Correct Mistake concerning which entities were properly opted out of the certified classes." *Id.* at ¶ 6.

In sum, defendants have raised an issue, the potential problem of unidentified unauthorized opt-outs, and proposed a solution to that problem, their Rule 60 Motion and related Discovery Motion. The Court concludes that this potential problem merits attention but for the reasons discussed in section III.B declines to adopt defendants' solution. Instead the Court grants leave to all entities on whose behalf such Requests for Exclusions were filed to affirm their intent to be opted out of the classes before June 9, 2003 and to ratify the Request for Exclusion filed on their behalf as discussed in section III.C.

## B.  REQUIREMENTS OF A PROPER OPT–OUT

█ Both the Rule 60 Motion and the related Discovery Motion are predicated on a definition of a "proper opt out" as one that was accompanied by "contemporaneous authorization" to the party that filed a Request for Exclusion on behalf of another party. Def.'s Mot. for Expedited Disc. ¶ 2. The Court rejects this definition and concludes that it imposes a significantly higher burden on parties that seek to opt-out than the law requires.

█ The Court agrees with the Tenth Circuit that a "reasonable indication" of intent to opt out is sufficient. *In re Four Seasons Securities Laws Litigation*, 493 F.2d 1288 (10th Cir.1974); *See also Plummer v. Chemical Bank*, 668 F.2d 654, 657 n. 2 (2d Cir.1982) ("Any reasonable indication of a desire to get

> (a) identify the individual or individuals from the entity that authorized the entity to be opted out of the certified classes (or if no individual from that entity authorized the opt out, please so state and identify the individual that authorized the opt out), the date the opt out was authorized; and
> (b) state all facts not previously provided in your interrogatory answers that demonstrate that such entity was properly opted out of the certified classes.
> Defendant's Motion for Expedited Discovery, Exhibit 1.

out should suffice."). This standard is necessary to give effect to the Due Process right to opt out identified by the Supreme Court in *Phillips Petroleum v. Shutts*, 472 U.S. 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). Further, the Court concludes that this is the correct approach, as the Tenth Circuit reasoned in *Four Seasons*, because the Court is not "construing a will, a deed or a contract." As 7A Wright, Miller & Kane, Federal Practice and Procedure § 1787 (1972), p. 156 explains:

> Rule 23(c)(2) does not specify how the absentee is to request exclusion. It certainly would be an undue burden on class members to require them to retain counsel and prepare a formal legal document; on the other hand, allowing too much informality might pose problems of authenticity and ambiguity. Nonetheless, considerable flexibility is desirable in determining what constitutes an effective expression of a class member's desire to exclude himself and any written evidence of it should suffice.

In deciding what is a reasonable indication of intent to opt out, the Court is guided by the fact that "[o]n several occasions, courts have passed on the issue of whether some particular action by an individual constituted an adequate request for exclusion ... The clear theme of these cases is that 'considerable flexibility' should be used in determining what constitutes an effective request for exclusion." *Council on Social Work Education, Inc. v. Texas Instruments*, 105 F.R.D. 68, 71 (N.D.Tex.1985) (citing 2 Newberg, Class Actions § 2475r (1977)).

For instance, in *Four Seasons*, the Tenth Circuit held that a class member that filed an opt out notice after the deadline, but had

> Defendants describe this interrogatory as "narrowly focused" and "extremely limited." *Id.* at ¶ 5. The Court concludes it is neither focused nor limited. In particular, part (b)-"state all facts not previously provided in your interrogatory answers that demonstrate that such entity was properly opted out of the certified classes" would impose a substantial burden on thousands of companies that have been opted out of the classes.

made various previous inquiries and statements during the exclusion period, had indicated a desire to opt out and should be permitted to do so. The court explicitly rejected "a rule that in order to opt out, the request must be explicit." *Id.* at 1291.

In *McCubbrey v. Boise Cascade Home & Land Corp.,* 71 F.R.D. 62 (N.D.Cal.1976), the court held that various parties had effectively opted out of a class by filing their own lawsuit against the class action defendants, even though they had not filed a formal, written exclusion request:

> The serious due process implications of holding an absent class member bound by a class adjudication demand that we look beyond formalistic procedures to evaluate whether a class member has reasonably expressed a desire to be excluded from a class suit.... [N]o reasonable person could view their conduct as expressing a desire to participate in the proposed settlement.

*Id.* at 70–71; *accord Bonner v. Texas City Independent School District,* 305 F.Supp. 600, 617 (S.D.Tex.1969).

In sum, the law requires a "reasonable indication" of a party's intent to opt-out for an opt-out to be proper. In determining whether a party has given a reasonable indication of its intent to opt out, courts use considerable flexibility. Parties are not, as defendants argue, required to give "contemporaneous authorization" to the party that filed a Request for Exclusion on their behalf. Because defendants' Rule 60 Motion and Discovery Motion are predicated on this incorrect definition of a proper opt-out, the Court denies both motions. The Court concludes that ratification, as opposed to defendants' Rule 60 Motion and Discovery Motion, will effectively and efficiently address the alleged unidentified unauthorized opt out problem. *In re Recticel Foam Corp. (In re San Juan Dupont Plaza Hotel Fire Litig.),* 859 F.2d 1000, 1004 (1st Cir.1988) ("[i]n multi-party, multi-case litigation, the district court's success is largely dependent on its ability to uncomplicate matters").

## C. RATIFICATION OF REQUESTS FOR EXCLUSION

In order to determine whether a party manifested the requisite intent prior to the opt-out deadline, the Court will allow parties on whose behalf a Request for Exclusion was filed to ratify that Request. Specifically, all such entities will be granted leave to affirm that the entity in question intended to be opted-out of the classes prior to June 9, 2003 and to ratify the Request for Exclusion filed on its behalf. By adopting this procedure, the Court is not ruling on the propriety of the questioned opt outs.

■ The Court has authority to order ratification pursuant to its broad equitable powers to manage multidistrict litigation generally and the disbursement of the settlement fund specifically. *In re Showa Denko K.K. L–Tryptophan Prods. Liab. Litig.,* 953 F.2d 162, 165 (4th Cir.1992) ("a district court needs to have broad discretion in coordinating and administering multi-district litigation") (citing *In re San Juan Dupont Plaza Hotel Fire Litig.,* 859 F.2d 1007, 1019 (1st Cir.1988)); *In re Orthopedic Bone Screw Products Liability Litigation,* 246 F.3d 315, 321 (3d Cir.2001) ("Settlement administration in a complex class action often requires the courts to use their equitable powers under Rule 23 to manage the disparate interests competing over a finite pool of assets with which to satisfy the class."). These equitable powers are retained by the court until the settlement fund is actually distributed, *In re Orthopedic Bone Screw Products Liability Litigation,* 246 F.3d at 321; *Zients v. La-Morte,* 459 F.2d 628, 630 (2d Cir.1972), and in this case, the fund will not be distributed until January 2005.

A number of other courts managing complex multidistrict antitrust litigation have permitted ratification by a party's agent. *In re Vitamins Antitrust Litigation,* 2001 WL 755852 (D.D.C.2001) (court allowed plaintiffs to cure real-party-in-interest issues by ratification); In *In re Armored Car Antitrust Litigation,* 645 F.2d 488 (5th Cir.1981). The Court concludes that *In re Armored Car Antitrust Litig.,* is particularly instructive. In *Armored Car,* the Fifth Circuit reversed the district court's refusal to allow the Attor-

ney General of Maryland to opt-out several Maryland political subdivisions from an anti-trust class action. Defendants argued the Attorney General lacked proper authority to do so when he filed opt-out notices on behalf of the Maryland political subdivisions, be-cause, according to defendants, under Mary-land law the subdivisions had to affirmatively consent to such action. 645 F.2d at 492.

The Fifth Circuit concluded that it need not address the issue of the authority of the Attorney General to opt Maryland political subdivisions out of the class because the enti-ties had ratified their intent to opt out. *Id.* at 493. On the basis of these ratifications, the Fifth Circuit ruled there was no dispute as to whether the subdivisions intended that the Attorney General file opt-out notices on their behalf. *Id.* Further, the Fifth Circuit held that the ratifications were retroactive to the timely filing of the Attorney General's opt-out requests. *Id.* Thus, the case did not involve the discretion of a district court to allow late-filed opt out requests. *Id.*

Similarly in this case, the Court need not address the issue of authorization that defen-dants raise if the direct action entities that were opted out affirm that it was their inten-tion to be opted out when the Requests for Exclusion were filed on their behalf. Any such ratification will be retroactive to the date the Requests for Exclusion were filed. Thus, the Court will not be required to rule on the late-filed requests for exclusion issue.

The Court finds analogous support for rati-fication in Federal Rule of Civil Procedure 17(a). Rule 17(a) which states, "every action shall be prosecuted in the name of the real party in interest," also requires that:

No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

The Advisory Committee "explained that the function of the Rule 17(a) real party in interest requirement is 'simply to protect the defendant against subsequent action by the party actually entitled to recovery, and to insure generally that the judgment will have its proper effect as res judicata.'" *In re Vitamins Antitrust Litig.*, 2001 WL 755852 at *4. Rule 17(a) both protects defendants from the threat of double recovery by the plaintiffs and allows plaintiffs a reasonable amount of time to cure. Ratification of the Requests for Exclusion in this case would achieve the same goals.

Defendants argue that ratification is inap-propriate because they have acquired a "vested defense" against the claims of the approximately 3,000 direct action plaintiffs they contend were opted out improperly. In advancing this position, defendants cite *Am-chem Prods. v. Windsor*, 521 U.S. 591, 612–13, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) for the rule that a class action cannot be used to "abridge, enlarge, or modify any substantive right" and the Restatement (Second) of Agency § 90 (1958) for the proposition that:

If the other party to a transaction has acquired a right in property or in any employment, or if another has acquired a defense against an action by the principal, the right or defense cannot be destroyed by ratification.

Def.'s Mem. in Supp. of Rule 60 Mot. 11, 23. Specifically, defendants argue that the defini-tion of "Class Members" as excluding only those who had "previously and properly" opt-ed out in all of the settlement agreements between the defendants and the classes cre-ated a defense against subsequent direct ac-tions by parties that had not met any of the "legal prerequisites" to opting out. The Court rejects this argument because it, like the Rule 60 Motion and Discovery Motion generally, is predicated on a mistaken under-standing of the requirements for properly opting out of a class.

The Court notes that it has already re-ceived from a number of entities ratifications of the commencement of the direct actions on their behalf. These ratifications were sub-mitted in the cases brought by Sara Lee

Corporation,[12] Kellogg Company and Keebler Foods Company,[13] and Smithfield Foods, Inc.[14] by a number of direct action plaintiffs. These ratifications include a statement as to the ownership interest of the company that filed the notice in the ratifying party and authorize the continuation of the direct action by the named plaintiff and state that the ratifying party will be bound by the judgment entered in the action. They are signed by a corporate officer. However, such ratifications do not address the issues raised in the Rule 60 Motion—they do not specifically refer to the intent of the entity to opt out of the classes before June 9, 2003, or the Request for Exclusion filed on its behalf. Thus, any entity which has submitted such a ratification must also execute the ratification form which will be provided pursuant to this Memorandum.

The Court has learned from the motion papers that some subsidiaries or affiliates executed formal assignments of their claims to their parent companies which then filed Requests for Exclusion on their behalf. *See* Direct Action Plaintiffs' Supplemental Brief Regarding "Rule 60 Issues" (Docket No. 477, filed August 18, 2004). These entities must also execute the ratification form which will be provided pursuant to this Memorandum.

The ratification form must be executed by either the chief executive officer ("CEO")or a duly authorized representative of the board of directors of each entity. *Abbott Laboratories v. CVS Pharmacy, Inc.*, 290 F.3d 854, 859 (7th Cir.2002) (a subsidiary's board of directors or chief executive officer may dismiss a suit brought by the subsidiary). Doing so avoids any disputes over the proper authority of a company to act on behalf of another. Such ratification must be completed under the procedure outlined in the attached order.

In the attached order, the Court directs Liaison Counsel for Direct Action Plaintiffs and Liaison Counsel for the Defendants to submit to the Court a proposed ratification form to be served on all opt-outs on whose behalf a Request for Exclusion was filed.

Any proposed form must provide for signature by either that entity's CEO or a duly authorized representative of that entity's board of directors. In the event a corporate entity has ceased to exist the CEO or board of directors of the successor in interest entity shall ratify the notice of exclusion filed on behalf of the predecessor entity.

Once the form is approved by the Court, the Court will direct Liaison Counsel for Direct Action Plaintiffs to serve copies of it on all entities on whose behalf a notice of exclusion was filed. The form shall be completed in duplicate within 45 days; one copy shall be sent to Liaison Counsel for Direct Action Plaintiffs, Richard J. Leveridge, Esquire, and one copy shall be sent to Liaison Counsel for the Defendants, Sherry A. Swirsky, Esquire. Liaison Counsel shall file and serve a joint report with respect to the status of the ratification process within 60 days of service of the ratification form on the entities on whose behalf Requests for Exclusion were filed.

## D. ENTITIES THAT FILED MOTIONS UNDER RULE 60(b)

In their Rule 60 Motion defendants also challenge the procedure the Court employed to address the identified unauthorized opt outs. As described above, by Order dated March 19, 2004, the Court ordered 79 parties who were opted-out without authority to submit Rule 60(b) Motions and Declarations in order to have their names removed from the opt-out list. By Order and Memorandum dated May 4, 2002, the Court granted the 10 Rule 60(b) Motions submitted by parties that had been opted out of the classes without authority. By Order date May 11, 2004, the Court directed the Clerk of Court to affix copies of a corrected list of opt-outs to the Court's final judgments approving the partial settlements. This corrected list of opt-outs was appended to the Order of May 11, 2004.

Defendants assert that this procedure was superfluous and that "such entities remained in the class throughout and, as a matter of

12. Docket No. 315, filed March 3, 2004.

13. Docket No. 316. filed March 3, 2004

14. Docket No. 381, filed May 17, 2004.

law, anyway." Def.'s Rule 60 Mot. 7. On the basis of this argument, defendants request that the Court remove from the corrected opt-out lists the names of the 69 companies that received the Court's Order of March 19, 2004, but failed to file the required Rule 60(b) Motion and Declaration.

The Court declines to grant defendants the relief they seek with respect to the companies that did not file Rule 60(b) Motions and Declarations in accordance with the Order of March 19, 2004. There is no authority for the proposition that the composition of the classes can change as a matter of law. Thus, all seventy-nine entities identified by Liaison Counsel for Direct Action Plaintiffs as having been opted without authority were not returned to the classes.

The corrected list of opt-outs appended to the May 11, 2004 Order identifies those companies that have opted-out of the classes certified by the Court. The Court declines to remove from the corrected opt-out list the names of the 69 companies that did not file Rule 60(b) Motions and Declarations as required under the Court's Order of March 18, 2004. However, in order to remain on the corrected opt out list, all such entities must execute the ratification form which will be provided pursuant to this Memorandum and attached Order.

## V. CONCLUSION

The defendants' Rule 60 Motion and Discovery Motion addresses the question whether an opt-out gave "contemporaneous authorization" to the party that filed a Request for Exclusion from the classes on its behalf. Because such authorization is not required to properly opt-out of the classes, the Court denies these motions. The law requires a "reasonable indication" of intent to opt out. In order to resolve any issue of whether such indication of intent to opt-out was given, the Court grants leave to all entities on whose behalf such Requests for Exclusions were filed to affirm their intent to be opted out of the classes before June 9, 2003 and to ratify the Request for Exclusion filed on their behalf.

An appropriate Order follows.

### ORDER

**AND NOW,** this 27th day of August, 2004, upon consideration of Defendants' Motion Under Rule 60 to Correct Mistake (Docket No. 392, filed June 6, 2004), Defendants' Motion for Expedited Discovery (Docket No. 391, filed June 9, 2004), Direct Action Plaintiffs' Opposition to Defendants' Motion for Expedited Discovery (Docket No. 410, filed July 9, 2004), Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion for Expedited Discovery (Docket No. 456, filed July 28, 2004), Memorandum by Class Counsel in Opposition to Defendants' Motion for Relief Under F.R.C.P. 60(b) (Docket No. 457, filed July 30, 2004), Defendants' Reply to Class Memorandum in Opposition to Defendants' Motion for Expedited Discovery in Connection with Rule 60 Motion (Docket No. 462, filed August 6, 2004), Direct Action Plaintiffs' Supplemental Brief Regarding "Rule 60 Issues" (Docket No. 477, filed August 18, 2004) and Defendants' Response to Direct Action Plaintiffs' Supplemental Brief Regarding "Rule 60 Issues" (Docket No. 478, filed August 23, 2004), for the reasons set forth in the attached Memorandum, **IT IS ORDERED** that Defendants' Motion Under Rule 60 to Correct Mistake (Docket No. 392) and Defendants' Motion for Expedited Discovery (Docket No. 391) are **DENIED.**

**IT IS FURTHER ORDERED** as follows:

1. Leave is granted to all entities on whose behalf requests for exclusion from the classes were filed to affirm their intent to be opted out of the classes before June 9, 2003, and to ratify the requests for exclusion filed on their behalf;

2. Liaison counsel for the parties shall, within fourteen (14) days, provide the Court with a form of ratification in accordance with the attached Memorandum for service on all entities on whose behalf requests for exclusion were filed;

3. Upon approval of the ratification form by the Court, liaison counsel for direct action plaintiffs shall serve two (2) copies of the form on all entities on whose behalf requests for exclusion were filed;

4. All entities on whose behalf requests for exclusion were filed shall, within forty-five (45) days of receipt of the ratification form, execute the form in duplicate and return one executed copy to liaison counsel for direct action plaintiffs, Richard J. Leveridge, Esquire, and one executed copy to liaison counsel for defendants, Sherry A. Swirsky, Esquire;

5. Liaison counsel for direct action plaintiffs and defendants shall file and serve a joint report with respect to the status of the ratification process within sixty (60) days of service of the ratification form on the entities on whose behalf requests for exclusion were filed. One (1) copy of the joint report shall be served on the Court (Chambers, Room 12613) when the original is filed; and,

6. In the event any entities on whose behalf requests for exclusion were filed do not submit the ratification form in accordance with this Order, defendants are granted leave to file supplemental motions under Federal Rule of Civil Procedure 60 and for expedited discovery within ninety (90) days of the date on which the ratification forms were served on such entities.

